1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DISCOVER PROPERTY AND
CASUALTY INSURANCE
COMPANY,

           Plaintiff,

v.

WILLIAM SCUDIER, et al.,

           Defendants.

2:12-CV-836 JCM (CWH)

**ORDER**

Presently before the court is plaintiff Discover Property and Casualty Insurance Company's motion for summary judgment. (Doc. # 30). Defendant Patrick Dillon responded (doc. # 33), and plaintiff replied (doc. # 34).[1]

Also before the court is defendant's counter motion to stay. (Doc. # 36). Plaintiff responded (doc. # 37), defendant replied (doc. # 38).

**I.    Factual background**

This action is an insurance coverage lawsuit seeking a declaration of non-coverage for William Scudier's ("Scudier") intentional abuse and molestation of Patrick Dillon ("Dillon").

---

[1] Plaintiff filed a request for judicial notice of defendant's opening brief in state court. (Doc. # 35). Pursuant to Fed.R.Evid. 201, a court may judicially notice matters of public record. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). Therefore, the court judicially notices this appellate brief as it is on the Supreme Court of Nevada's docket.

James C. Mahan
U.S. District Judge

1  Scudier was an employee of Victory Village 2004, LLC ("Victory Village") and B&R Property

2  Management ("B&R") (collectively "the association"). Dillon lived in the association and was 13

3  years old at the time of the abuse.

4          **A.**     **Insurance policies**

5         Discovery Property and Casualty Insurance Company ("Discover" or "plaintiff") issued two

6  sequential liability insurance policies to the associate. (Doc. # 30, Exs. B & C). The policies include

7  Scudier as an "insured" when he was acting as an employee of the association.

8          **B.**     **Underlying action**

9         In state court, Dillon filed a lawsuit against Scudier, Victory Village, and B&R for Scudier's

10  intentional abuse and molestation of Dillon.[2] Dillon's second amended complaint asserts the

11  following causes of action: (1) battery against Scudier; (2) assault against Scudier; (3) intentional

12  infliction of emotional distress against Scudier; (4) false imprisonment against Scudier; (5) negligent

13  hiring against Victory Village and B&R; (6) negligent supervision against Victory Village and B&R;

14  (7) negligent retention against Victory Village and B&R; (8) gross negligence against Victory

15  Village and B&R; and (9) respondeat superior against Victory Village and B&R.[3] (Doc. # 30, Ex.

16  D).

17         The underlying complaint contains the following critical factual allegations supporting

18  Dillon's claims for relief:

19       ¶ 6     In October 2004, Patrick ("Dillon") along with his mother Joann Dillon, and her

20                 boyfriend, Denver Lacey, moved into Apt. 627 at Victory Village.

21       ¶ 7     Patrick was twelve (12) years old at this time.

22       ¶ 14    Patrick began living with Scudier during January 2006.

23       ¶ 16    In late-January 2006, Scudier performed oral sex on Patrick for the first time.

24       ¶ 17    From January 2006 through August 2006, Scudier performed oral and anal sex on

25

26           [2] This case is currently ending in Clark Country District Court, case no. A-10-609918-C.

27           [3] The trial court granted summary judgment in favor of Victory Village and B&R. (*See* doc. # 33, Ex. 1). This

28  order is on appeal.

**James C. Mahan**
**U.S. District Judge**

1    Patrick numerous times.

2    ¶ 18    The frequency of the sexual contact varied from once a month to multiple times per
3            week.

4    ¶ 19    Patrick was thirteen (13) years old throughout the duration of the sexual relationship
5            between he and Scudier.

6    ¶ 23    On April 20, 2007, Scudier was charged with twenty-three (23) counts of Sexual
7            Assault with a Minor Under Fourteen Years of Age, and twenty-three (23) counts of
8            Lewdness with a Child Under the Age of 14.

9    ¶ 24    On October 15, 2008, Scudier pled guilty to three counts of felony Coercion,
10           pursuant to NRS §§ 207.190 and 175.547, stemming from his relationship with
11           Patrick.

12   ¶ 42    Scudier restrained Patrick within Scudier's apartment without legal justification or
13           consent.

14   ¶ 45    At some point in February 2006, Scudier took Patrick to the Fiesta Hotel and Casino
15           in Henderson, Nevada.

16   ¶ 46    At some point in June 2006, Scudier took Patrick to the Green Valley Ranch Resort,
17           Spa & Casino in Henderson, Nevada.

18   ¶ 47    At some point in June 2006, Scudier took Patrick to the Longhorn Hotel and Casino
19           in Las Vegas, Nevada.

20   ¶ 48    At some point in August 2006, Scudier took Patrick on a trip to Zion National Park
21           in Utah.

22   ¶ 50    Patrick could not reasonably have exited or escaped these premises, which were
23           miles form his home.

24   (Doc. # 30, Ex. D).

25       **C.    Instant action**

26           Plaintiff filed the instant action seeking declaratory relief against Scudier and Dillon. (Doc.

27   # 22). Scudier was timely served; however, Scudier failed to answer or otherwise respond. After

28

**James C. Mahan**
**U.S. District Judge**                                    - 3 -

putting Scudier on notice of his failure to respond, the court entered default judgment against him; leaving Dillon as the only remaining defendant in this action.

Plaintiff seeks the following relief against Dillon: (1) a declaration that no coverage or potential for coverage exists under the terms and provisions of its policies for the claims by Dillon against Scudier in the underlying action; and (2) a declaration that plaintiff has no duty to defend or indemnify claims by Dillon against Scudier in the underlying action. (Doc. # 22).

Plaintiff now moves this court to enter judgment in its favor. (Doc. # 30). Dillon has filed a counter motion to stay this action pending resolution of an appeal in the underlying action. (Doc. # 36). The court addresses each motion in turn.

**II.     Motion for summary judgment (doc. # 30)**

    **A.     Legal standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party

1  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

2  to meet its initial burden, summary judgment must be denied and the court need not consider the

3  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

4      If the moving party satisfies its initial burden, the burden then shifts to the opposing party

5  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

6  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

7  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

8  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

9  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

10  Cir. 1987).

11      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

12  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

13  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

14  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

15  for trial. *See Celotex Corp.*, 477 U.S. at 324.

16  **B.   Discussion**

17      "An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 655 (1985).

18  A court "should not rewrite contract provisions that are otherwise ambiguous." *Id.* Summary

19  judgment is appropriate when the contract terms are clear and unambiguous, even if the parties

20  disagree as to their meaning. *See United States v. King Features Entertainment, Inc.*, 843 F.2d 394,

21  398 (9th Cir. 1988); *see also Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406

22  (9th Cir.1985). Interpretation of the contract, including whether it is ambiguous, is a matter of law.

23  *Framers Ins. Exchange v. Neal*, 119 Nev. 62, 64 (2003); *Beck Park Apts. v. United States Dep't of*

24  *Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, contractual construction is a question of law

25  and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto Ass'n*, 106 Nev.

26  601, 603 (1990).

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1

i.    **Nevada insurance law[4]**

2    Generally, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins.*

3  *Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "Insurance policies are contracts to which ordinary rules of

4  contractual interpretation apply." *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21,

5  28 (1998). The court should "look first to the language of the contract in order to ascertain its plain

6  meaning . . . ." *Waller*, 11 Cal.4th at 18. "A policy provision is ambiguous when it is capable of two

7  or more constructions both of which are reasonable." *Id.* (quotations omitted). "Any ambiguous

8  terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Kazi*

9  *v. State Farm Fire and Cas. Co.*, 24 Cal.4th 871, 879 (2001).

10    "An insurer must defend any action that asserts a claim potentially seeking damages within

11  the coverage of the policy." *Maryland Casualty Co.*, 65 Cal.App.4th at 32 (quoting *Montrose*

12  *Chemical Corp. v. Super. Ct.*, 6 Cal.4th 287, 295 n.3 (1993)); *see also Buss v. Sup. Court*, 16 Cal.4th

13  35, 46 n.10 (1997) (holding that the duty to defend is dependent on "at least potential coverage.").

14  "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop

15  . . . ." *Kazi*, 24 Cal.4th at 879; *see also Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583 (1998).

16    "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and

17  kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19. "[W]here there is no potential for

18  coverage, there is no duty to defend." *Infinet Mktg. Servs., Inc. v. Am. Motorist Ins. Co.*, 150

19  Cal.App.4th 168, 177 (2007); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th

20  Cir. 2010) (holding that the duty to defend does not exist where there is no legal theory or facts in

21  the underlying complaint to potentially give rise to coverage) (citing *Gunderson v. Fire Insurance*

22  *Exch.*, 37 Cal.App.4th 1106 (1995)).

23    "[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party

24  lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Food*

25  *Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 985 (2008) (citing *Waller*, 11 Cal.4th

26

27    [4] "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720

28  F.Supp.2d 1223, 1235 (D.Nev. 2010).

**James C. Mahan**
**U.S. District Judge**

1  at 19; *Montrose Chemical Corp.*, 6 Cal.4th at 295). "Nevada has adopted the 'complaint rule,'

2  pursuant to which an insurer that seeks to avoid its duty to defend its insured may only do so by

3  comparison of the complaint in the underlying litigation to the terms of the policy." *OneBeacon Ins.*

4  *Co. v. Probuilders Specialty Ins. Co.*, No. 3:09–CV–36–ECR–RAM, 2009 WL 2407705, at *8 (D.

5  Nev. 2009) (citing *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 686 (2004)).

6          **ii.**     **Analysis[5]**

7      Plaintiff argues that coverage is barred for three reasons: (1) the policies' abuse and

8  molestation exclusion; (2) defendant's injuries were not caused by an "occurrence, as required by

9  plaintiff's insurance policies; and (3) the policies' intentional act exclusion. The court will address

10  each in turn.

11          **(1)**     **Abuse and molestation exclusion**

12      The abuse and molestation exclusion states:

13      The insurance does not apply to "bodily injury", "property damage" or "personal and

14      advertising injury" arising out of:

15      1.     The actual or threatened abuse or molestation by anyone of any person while

16           in the care, custody or control of any insured . . . .

17  (Doc. # 30, Ex. B, p. 46). The terms "abuse" and "molestation" are undefined in the policies and thus

18  take "their plain, ordinary and popular connotations." *American Express Ins. Co. v. MGM Grand*

19  *Hotels, Inc.*, 102 Nev. 601, 604 (1986). "Abuse" is defined to "use or treat in such a way as to cause

---

21     [5] As an initial matter, the insurance policies issued by plaintiff only cover those who are an insured. Scudier is
an insured "only for acts within the scope of [his] employment by [the association] or while performing duties related
22  to the conduct of [the association's] business." (Doc. # 30, Ex. B, 25, § 2). The court has serious doubts as to whether
Scudier's actions could be construed to be within the scope of his employment and thus questions whether Scudier is an
23  "insured". As the Nevada state court held in granting summary judgment in favor of Victory Village and B&R:

24      The alleged sexual relationship between Plaintiff Patrick Dillon and Scudier was a truly independent
    venture and not committed in the course of the very task assigned to Scudier as the maintenance
25      supervisor

26      The allegations of a sexual relationship between Scudier and Patrick Dillon were not acts performed
    on behalf of Victory Village or B&R Property Management or committed out of any sense of duty to
27      his employers.

28  (Doc. # 33, Ex. 1, ¶¶ 6-7). Thus the court's analysis is relevant only to the extent that Scudier is an "insured".

1  damage or harm" or to "treat with cruelty or violence, especially regularly or repeatedly." Oxford

2  Dictionaries (2013). "Molestation" is defined as "assault or abuse (a person, especially a woman or

3  child) sexually." *Id.*[6]

4       Here, Dillon alleges that Scudier performed "oral and anal sex" on him "numerous times"

5  in 2006. (Doc. # 30, Ex. D, ¶¶ 16-18). Although "abuse" and "molestation" are not defined in the

6  policies, it is apparent that oral and anal sex with a minor fall within the plain meaning of these

7  terms. Further, the Nevada Supreme Court has held that "[s]exual seduction is a form of child

8  molestation." *Fire Ins. Exch. v. Cornell*, 120 Nev. 303, 306 (2004). Since "statutory sexual

9  seduction" includes "anal intercourse" and "fellatio";[7] it is clear that the plain meaning of "abuse"

10 and "molestation" include this conduct.

11      Additionally, Dillon alleges that he was in Scudier's "care, custody or control" as Dillon was

12 "restrained" in Scudier's apartment and was unable to leave when Scudier took him on several trips

13 during 2006. (Doc. # 30, Ex. D, ¶¶ 42, 45-48, 50).[8]

14      Thus, considering the allegations in the underlying complaint against Scudier, the court finds

15 that plaintiff's policies do not provide coverage to Scudier under the abuse and molestation

16 exclusion.

17            **(2)    Defendant's injuries were not caused by an occurrence**

18      Plaintiff's policies provide coverage only as follows:

19      b.    This insurance applies to "bodily injury" or "property damage" only if:

20          (1)    The "bodily injury" or "property damage" is caused by an

21               "occurrence" that takes place in the "coverage territory" . . . .

22

23

24       [6] Molestation is a noun of molest.

25       [7] NRS §200.364(5)(a).

26

27       [8] Further, Scudier pleaded guilty to coercion, which the indictment defines as "use of physical force, or the immediate threat of such force, against Patrick Dillon, with intent to compel him to do, or abstain from doing, an act which he had a right to do, or abstain from doing, by said Dillon preventing the said Patrick Dillon from leaving his presence." (Doc. # 30, Ex. F, 11:25-28).

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1  (Doc. # 30, Ex. B., 19). That is, plaintiff's policies require that any damages for "bodily injury" to

2  Dillon be the result of an "occurrence," meaning accident. "Occurrence" has been interpreted by the

3  Nevada Supreme Court to mean that, where the act of the insured is deliberate, the injuries cannot

4  be the result of an "occurrence". *See Beckwith v. State Farm Fire & Cas. Co.*, 120 Nev. 23, 27

5  (2004). Whether the insured intended to inflict injury is irrelevant for determining whether the actual

6  injury-producing force was an accident. *Id.*

7      The court does not find defendant's reliance on *Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d

8  1104 (D. Nev. 2007) persuasive. In that case, the incident that implicated coverage involved the

9  insured, who had been drinking, throwing a metal sign that hit another person. *Id.* at 1106. Based on

10  those circumstances, the court found that the injuries were the result of an accident. *Id.* at 1108. Here,

11  defendant's complaint includes allegations that demonstrate that Scudier's conduct was not

12  accidental (*see* doc. # 30, Ex. D, ¶ 24), that is, Scudier admitted guilt for coercion which requires

13  intent.

14      Further, having found that the allegations in the underlying complaint amount to child

15  molestation, the court finds that child molestation is always intentional, always wrongful and always

16  harmful–there is no such thing as unintentional child molestation. *See, e.g.*, *Northland Ins. Co. v.*

17  *Briones*, 81 Cal. App. 4th 796, 806 (2000); *see also J. C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d

18  1009, 1025 (1991). Further, Dillon's allegations of false imprisonment are also, necessarily,

19  intentional.[9] Thus, regardless of the truth of falsity of the allegations contained in the underlying

20  complaint, the theories that intend to impose liability upon Scudier for his actions require deliberate

21  actions that resulted in Dillon's injury.

22      Therefore, there is no genuine issue of material fact with regard to the deliberateness of

23  Scudier's actions and thus are not an "occurrence" or accident.

24

25      [9] "To establish false imprisonment . . . it is necessary to prove that plaintiff was restrained of his liberty under

26  probable imminence of force without any legal cause or justification." *Garton v. City of Reno*, 102 Nev. 313, 314-15
(1986). That is, Dillon has alleged that Scudier displayed a "probable imminence of force" in keeping Dillon retained

27  against his will. This threat of force cannot be accidental.

28

**James C. Mahan**
**U.S. District Judge**

1

**(3)     Intentional act exclusion**

2      Plaintiff's policies contained an "expected or intended injury" exclusion that provides:

3            2.     Exclusions

4                  This insurance does not apply to:

5                  a.     Expected Or Intended Injury:

6                  "Bodily injury" or "property damage" expected or intended from the

7                  standpoint of the insured. This exclusion does not apply to "bodily injury"

8                  resulting from the use of reasonable force to protect persons or property.

9   (Doc. # 30, Ex. B, 19).

10      Dillon's injuries were "expected or intended" from the stand point of Scudier as harm is

11   inherent in the act of child molestation itself. *See Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105,

12   1107 (9th Cir. 1993) (discussing established California authority that "does not require a showing

13   by the insurer of its insured's 'pre-conceived design to inflict harm' when the insured seeks coverage

14   from the intentional and wrongful act if the harm is inherent in the act itself.") (citing *J.C. Penny*,

15   52 Cal.3d at 1025)). Dillon's argument in his response that he consented to the acts and therefore

16   Scudier did not intend to cause harm that results from "rape" or "assault and battery" (*see* doc. # 33,

17   6:4-7), is not only legally unsupported but also intellectually infirm.

18      Defendant, as a minor, did not have the capability to consent;[10] any argument otherwise is

19   an incorrect statement of the law. Further, Scudier's alleged actions are precisely "like a rape or

20   assault and battery" that cause harm. Not only are assault and battery two separate causes of action

21   Dillon asserts against Scudier in the underlying complaint; but also "oral and anal sex" with a minor,

22   who is incapable of consent, "is like a rape."

23      Thus, provided the allegations in the underlying complaint against Scudier, the court finds

24   that plaintiff's policies do not provide coverage to Scudier under the intentional act exclusion.

25   . . .

26   . . .

27   ────────────────

28      [10] *See* NRS § 200.364(5)(a).

**James C. Mahan**
**U.S. District Judge**

1    **III.      Counter motion to stay (doc. # 36)**

2           In Dillon's counter motion to stay, Dillon requests the court to enter a stay pending resolution

3    of his appeal of a state court order granting summary judgment in favor of Victory Village and B&R,

4    the holders of the insurance policies. Dillon argues these insureds could have their rights under the

5    insurance contract affected if the court grants plaintiff's motion.

6           Dillon cites *Erie Railway Co. v. Tompkins*, 304 U.S. 64, 71-80 (1938) and argues that the

7    court should apply Nevada substantive law. Specifically, Dillon relies on NRS § 30.130 which states

8    that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any

9    interest which would be affected by the declaration, and no declaration shall prejudice the rights of

10   persons not parties to the proceeding." Dillon goes on to compare the requirements of NRS § 30.130

11   to Fed. R. Civ. P. 19.

12          The court denies Dillon's request for four reasons. First, NRS § 30.130 is procedural, not

13   substantive, as demonstrated by Dillon's own comparison of this law's requirements to that of Fed.

14   R. Civ. P. 19. Second, Dillon does not seek to add Victory Village or B&R as party under this rule.

15   Third, this court's order resolves issues of coverage under plaintiff's policies only as to Scudier. This

16   order has no bearing on whether plaintiff owes a duty to defend Victory Village or B&R. And fourth,

17   the causes of action asserted against Scudier and the association are different: battery, assault,

18   intentional infliction of emotional distress, and false imprisonment against Scudier; and negligent

19   hiring, negligent supervision, negligent retention, gross negligence, and respondeat superior against

20   the association.

21          As such, Dillon's counter motion to stay is denied.

22   **IV.     Conclusion**

23          The court notes that the parties made several arguments and cited several cases not discussed

24   above. The court has reviewed these arguments and cases and determines that they do not warrant

25   discussion as they do not affect the outcome of these motions.

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1    Accordingly,

2         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Discover Property

3    and Casualty Insurance Company's motion for summary judgment (doc. # 30) be, and the same

4    hereby is, GRANTED.

5         IT IS FURTHER ORDERED that defendant Patrick Dillon's counter motion to stay (doc.

6    # 36) be, and the same hereby is, DENIED.

7         IT IS FURTHER ORDERED that the clerk of the court enter judgment in favor plaintiff and

8    close this case.

9         DATED May 16, 2013.

10

11

_____

**UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**